UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:
Ralph Holley and
Melonee Monson-Holley

        Debtors.
_____/

Collene K. Corcoran, Chapter 7 Trustee,　　　　　Case No. 18-10880
　　　　　　　　　　　　　　　　　　　　　　　　Honorable Sean F. Cox
        Appellants

v.
Ralph Holley and Melonee Monson-Holley,

        Appellees.
_____/

## OPINION AND ORDER

This is a bankruptcy appeal from a Chapter 7 proceeding. Trustee Collene K. Corcoran appeals an order that requires her to turn over $20,036.68 in administrative fees that she retained from the sale of the debtors' home. For the reasons below, the Court will AFFIRM the bankruptcy court's order.

## BACKGROUND

On September 25, 2012, Debtor Ralph Holley filed a Chapter 7 voluntary petition for bankruptcy, as an individual, in the United States Bankruptcy Court for the Eastern District of Michigan. He was represented by his wife, Melonee Monson-Holley, an attorney. The action was assigned to the Honorable Daniel Opperman.

On Holley's bankruptcy schedule, he listed his house ("the Property") as his most valuable asset. He claimed that the property was exempt under Michigan's tenancy by the entireties (TBE)

1

exemption. *See* Mich. Comp. Law § 600.5451(1)(o) (2006)

Later, Monson-Holley filed her own bankruptcy petition, also ranking the Property as her most valuable asset and claiming Michigan's TBE exemption. The two cases were joined and administered by Judge Opperman pursuant to a June 3, 2013 Order for Joint Administration. Collene K. Corcoran ("Trustee") was appointed trustee in both of these cases.

In September 2013, Trustee arranged to sell the Property to satisfy creditor claims. She filed a motion for authority to sell it free and clear under 11 U.S.C. § 363, averring that a third-party offered to purchase the house for $451,000. The Debtors initially objected to the proposed sale, but later petitioned the bankruptcy court for a reduced sales price so that they could arrange for their own third-party purchaser. They also stipulated to an order granting the Trustee's motion to sell, conditioned on the Debtors having an opportunity to seek their own preferred purchaser. In December 2013, the bankruptcy court granted Trustee's motion to sell and then, per Debtors' request, entered a separate order reducing the sales price to $315,000. Thereafter, Trustee sold the Property to Debtors' chosen purchaser and retained the proceeds. Debtors then signed a lease-option that allowed them to continue living at the Property.

In January 2015, Trustee filed a final report and account of her administration of Debtors' estates. She showed gross receipts of $330,698.41 from the Debtor's assets, approximately $320,000 of which came from the Property's sale, and a balance of $101,486.65 after paying the secured creditors' claims. From that sum, Trustee proposed paying herself $97,734.32.

Debtors objected to Trustee's final report and account, contending that the sale proceeds were unavailable to pay administrative fees because they were exempt under Michigan's TBE law. The bankruptcy court denied Debtors' objections, and awarded administrative expenses and fees,

most of which came from the proceeds of the Property sale. On appeal, this Court affirmed that award. Debtors appealed to the United States Court of Appeals for the Sixth Circuit.

**The Sixth Circuit's Opinion**

The Sixth Circuit vacated the bankruptcy court's order to pay Trustee's administrative fees from the sale proceeds. After determining that Debtors had properly claimed the TBE exemption, the Court noted that "11 U.S.C. § 522(k) prohibits a bankruptcy court from charging exempt property for administrative expenses (with exceptions not relevant here)." *In re Holley*, 661 Fed.App'x 391, 396 (6th Cir. 2016). Micigan's TBE exemption "protected the *entire* value of this couple's property—which in this case would be the cash proceeds from the Property's liquidation at the sale—minus deductions for those sums due to joint creditors." *Id*. (emphasis in original). The Sixth Circuit concluded that the bankruptcy court "could not lawfully award any of the exempt Property's equity to pay the Trustee's fees" and remanded for "proceedings consistent with this opinion." *Id.* at 396-397.

**On Remand**

On June 16, 2017, the bankruptcy court ordered Trustee to "pay all proceeds from the sale of [the Property], after payment of joint creditors, to the Debtors." (D.E. 3, PageID 35). Trustee tendered $75,918.65, which she believed to be the proper amount based on the Sixth Circuit's opinion. Debtors objected, arguing that the correct amount was $84,204.32, which was the total of fees and expenses paid to Trustee, her attorneys, and her accountant. (D.E. 3, PageID 41). The bankruptcy court agreed with Debtors and ordered Trustee to pay the $8,285.67 difference. (D.E. 3, PageID 43). Trustee paid this amount, but both Trustee and the Debtor filed a motion for reconsideration of that order.

3

The bankruptcy court reconsidered its order. Applying the Sixth Circuit's mandate and *Law v. Siegel*, 134 S. Ct. 1188 (2014), the court held that "[t]he realtor commissions and related costs of the sale of the subject real property are administrative expenses, which must be accounted for and which must not be charged against the Debtors' validly allowed exemption." (D.E. 3, PageID 66). The bankruptcy court also reiterated that $9,971 in tax refunds—which the Sixth Circuit had not addressed—were exempt per the bankruptcy court's July 18, 2014 order denying Trustee's objections to exemptions. The bankruptcy court then employed an "easier method to calculate the amount that must be turned over to Debtors:"

| | | |
|---|---|---|
| Proceeds from [sale of the Property] | | $320,727.26 |
| Tax Refunds | + | $9,971.15 |
| | | $330,698.41 |
| Liens on [the Property] | - | $207,373.63 |
| | | $123,324.78 |
| Amounts previously paid to Debtors | - | $93,956.65 |
| Amount to be turned over to Debtor | | $29,368.13 |

(D.E. 3, PageID 67). [1]

The bankruptcy court ordered Debtors to prepare an order consistent with its opinion. (D.E. 3, PageID 67). Debtors submitted a "Debtor's Calculations of Additional Exempt Property Being Held by the Chapter 7 Trustee." (D.E. 3, PageID 206). Debtor's calculation was substantially similar to the Court's formula, except Debtors subtracted $9,431.50 that was paid at closing for real estate taxes, water bills, and water escrow, and added a $100 water credit. (D.E. 3, PageID 206). In the end, Debtors submitted a proposed order that required Trustee to turn over $20,036.68. (D.E.

---

[1] It appears that the bankruptcy court determined the "Amount Previously Paid to Debtors" by adding the $84,204.32 that Trustee paid after remand to the $9,752.33 that the Trustee had already paid throughout the case ($6,000 to replace the Property's furnace and $3,752.33 to satisfy a post-petition creditor).

4

3, PageID 207). The bankruptcy court entered this order, which is the subject of this appeal. (D.E. 3, PageID 73).

## STANDARD OF APPEAL

Trustee appeals from the bankruptcy court's "Order Regarding the Parties Cross Motions to Reconsider this Court's June 16, 2017 Opinion and Order." (D.E. 1, PageID 2). Although this order does not purport to grant or deny any motion, it effectively granted Debtor's motion for reconsideration. (D.E. 3, PageID 73 and 206). An order that grants or denies a motion for reconsideration is reviewed for abuse of discretion, except that any aspect of the ruling that relies upon issues of law is subject to *de novo* review. *Greenwell v. Parsley*, 541 F.3d 401, 403 (6th Cir. 2008). The interpretation of an appellate mandate is an issue of law. *United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012).

## ANALYSIS

Trustee raises four arguments on appeal. First, she argues that the bankruptcy court erred in its interpretation of the Sixth Circuit's mandate ("the Mandate") by addressing and granting the Debtor's motion for turnover of the tax refund money. Second, she argues that the bankruptcy court erred in its interpretation of the Mandate by including the sale expenses in its calculation of the turnover amount. Third, she argues that, under the doctrine of equitable mootness as to third parties, the bankruptcy court erred in ordering her to turnover money (that she no longer controls) because Debtors never filed a stay pending appeal in their original appeal. Fourth, she argues that the bankruptcy court erred by failing to address that the estate was administratively insolvent and, therefore, unable to turnover any additional money.

5

**I. Tax Refund**

Trustee asserts that "the Bankruptcy Court unilaterally acknowledged that the tax refund issue was not within the scope of the [Sixth Circuit's] mandate but it needed to be addressed despite the fact that it was not addressed in the mandate which dealt solely with the sale proceeds for the real estate." (D.E. 5, PageID 220) (internal citations omitted). Trustee further asserts that "[t]he Bankruptcy Court's decision to implement the recovery of the tax refund monies was simply incorrect and not within the mandate and led to a confusion of the issues in the case." *Id*.

Contrary to Trustee's assertions, the bankruptcy court did not purport to interpret the Mandate or grant a motion from Debtor when it considered the tax refund issue on remand. Rather, the bankruptcy court simply acknowledged that "this Court previously ruled that the Debtor's exemptions were proper regarding the 2009-2012 refunds, so it appears that the issue did not need to be addressed by the Sixth Circuit Court of Appeals." (D.E. 3, PageID 41) (referring to Order Denying the Chapter 7 Trustee's Options to Debtor's claim of exemptions and vacating October 29, 2013 Order Granting the Trustee's Objection to the Debtors' Amended Claim of Exemption (D.E. 3, PageID 140) and accompanying Opinion (D.E. 3, PageID 131-139)). The bankruptcy court was not interpreting the Mandate; it was applying its own previous decision to determine how much exempt money still needed to be turned over to Debtors.

Moreover, "remands...can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the [lower court] and create a narrow framework within which the [lower court] must operate...General remands, in contrast, give the [lower court] authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)

Here, the Sixth Circuit vacated "the bankruptcy court's orders with respect to the payment of the Trustee's administrative fees, [and remanded] for proceedings consistent with this opinion." *In re Holley*, 661 Fed.App'x at 397. This language clearly describes a general remand, and the bankruptcy court was free to consider any matter as long as it did not act inconsistently with the Sixth Circuit's decision. *See Owner-Operator Indep. Drivers Assoc., Inc. v. Comerica Bank*, 562 F. App'x 312, 331 (6th Cir. 2014) (finding that identical language was a general remand and that it "imposes no limit on the issues for review and establishes no particular procedure for the district court to follow"); *United States v. United Technologies Corporation*, 190 F.Supp.3d 752, 757 (S.D. Ohio 2016) (describing identical language as "the quintessential general remand.")

Notably, Trustee does not argue that the bankruptcy court's decision to consider the tax refunds was inconsistent with the Sixth Circuit's general remand; rather, she argues that the tax refunds were "not within the scope of the mandate." This argument cannot succeed when, as here, the appellate court issued a general remand.

The Court concludes that the bankruptcy court's consideration of exempt tax refunds was consistent with the Mandate. At bottom, the bankruptcy court needed to determine what portions of the estates were exempt and what amount Trustee needed to turn over to Debtors. To reach the correct conclusion, the bankruptcy court needed to consider the exempt tax refunds. Therefore, the bankruptcy court properly considered the tax refunds.

**II. Sale Expenses**

Next, Trustee argues that the bankruptcy court erred in its interpretation of the Mandate by including the Property's sale expenses in the turnover amount because "the sale order, consented to by the debtors, provided that the Trustee may pay at closing, the realtor's commission, all real

7

property taxes, and transfer taxes, closing costs, recording fees, water bills, occupancy escrows, if necessary, and other standard costs associated with the sale." (D.E. 5, PageID 221).

As explained above, Trustee can only prevail on this argument if she shows that including the sale expenses is inconsistent with the Sixth Circuit's general remand in this case.

The Sixth Circuit considered the question of whether the bankruptcy court erred by deciding that the Trustee could pay administrative fees from the sale proceeds, and concluded that "this decision brushe[d] off the exemption's plain terms." *In re Holley*. 661 Fed.App'x at 396. "Michigan law protected the *entire* value of this couple's property—which, this case would be the cash proceeds from the Property's liquidation at the sale—minus deductions for those sums due to joint creditors" *Id*. (emphasis in original) (citing Mich. Comp. Law § 600.545(1)(n)(2012) and *In re Guzior*, 347 B.R. 237, 247 n.6 (Bankr. E.D. Mich. 2006)). "The plain text of the law protected the Property-sale proceeds minus the payouts to satisfy joint creditors' claims, from invasion by the Trustee to pay administrative expenses." *Id*. The bankruptcy court "could not lawfully award any of the exempt Property's equity to pay the Trustee's fees." *Id*.

Thus, the Sixth Circuit gave a clear formula to the bankruptcy court: (The cash proceeds from the Property's liquidation)[2] - (the sum due to joint creditors) = (Debtor's exempt sum).

The bankruptcy court accurately applied this formula, using the Trustee's reported figures. (D.E. 3, PageID 64). The bankruptcy court started with the proceeds of the sale and added the tax refunds. Then, it subtracted the amount owed to joint creditors for liens on the Property. In doing

---

[2] Notably, the Sixth Circuit described this first amount as *proceeds,* which are "the value of land, goods, or investments when converted into money; the amount of money received from a sale." Black's Law Dictionary (10th ed. 2014). The Court did not use the term *net proceeds*, which is "the amount received in a transaction minus the costs of the transactions (such as expenses and commissions)." *Id*. .

8

so, the bankruptcy court arrived at the sum that Debtors were entitled to under the TBE exemption, plus the exempt tax refunds. Finally, the bankruptcy court subtracted the amount that Debtors had already received, to determine the amount that Trustee still needed to turn over. Although the bankruptcy court's calculation includes a few more elements, it is consistent with the Sixth Circuit's opinion.

After the bankruptcy court calculated this $29,268.13 sum, Debtors' submitted a new calculation of exempt property, which subtracted an additional $9,431.50 for closing costs including "real estate taxes, water bill, and water escrow." (D.E. 3, PageID 206). Debtors also added a $100 water credit. *Id*. The bankruptcy court adopted these changes and ordered Trustee to turn over $20,036.68. (D.E. 3, PageID 207). Trustee does not specifically object to this reduction but, even if she did, the Court does not see any reason why Debtors cannot choose to pay some closing costs using their exempt funds.

Trustee's main objection to the bankruptcy court's calculation is that it requires her to turnover money that the bankruptcy court previously allowed her to spend. (D.E. 5, PageID 221). The bulk of the $20,036.68 appears to be $13,530 that was paid to the realtor as commission for the sale of the Property. (D.E. 3, PageID 69). As the Sixth Circuit explained, however, the bankruptcy court's orders on administrative expenses were wrongly decided and are now vacated. If any of the bankruptcy court's orders allowed Trustee to pay administrative fees—including a commission for a professional that Trustee hired—from exempt funds, these orders are no longer in force. Thus, Trustee cannot rely on them during this appeal.

Trustee also argues that Debtors' waiver of the stay period provided for in the sale order has some significance. (D.E. 5, PageID 221) ("Moreover, as part of that sale order, the debtors agreed

9

to waive the stay period provided for in F.R.Bank.P. 6004(h) and the sale order had immediate effect."). Trustee does not develop this argument, and the Court does not see its relevance.

For these reasons, Trustee's argument that the bankruptcy court's calculation should not have included sale expenses is meritless.

**III. Equitable Mootness**

Trustee argues that "equitable mootness applies to all payments made by the Trustee to third parties under the sale order as well as the distribution order." (D.E. 5, PageID 222).

Trustee advances this argument for the first time in connection with her motion to reconsider. (D.E. 3, PageID 70). Issues raised for the first time in motions requesting reconsideration are not properly preserved for appeal. *Am. Meat Inst. v. Pridgeon*, 742 F.2d 45, 47 (6th Cir. 1984) (finding that an issue raised for the first time in a motion to reconsider issuance of injunction was untimely and thus waived on appeal). Thus, this argument is waived and the Court will not consider it.

**IV. Administratively Insolvent**

Finally, Trustee argues that "[t]he Chapter 7 Bankruptcy Trustee had fully disbursed funds of this Estate as of August 11, 2015" and "[t]he fact that the Estate is administratively insolvent leaves there nothing to be turned over." (D.E. 5, PageID 223)

Simply put, Trustee does not cite relevant legal authority in support of this argument. Trustee cites *Rushton v ANR Company*, Inc. 740 F.3d 548 (10th Cir. 2014) for the proposition that "[t]he distribution of the funds by the Estate rendered payment of the sale expenses to proceed and other payments to third parties to proceed." (D.E. 5, PageID 224). This is a factual statement that does not explain why, legally, Debtors are not entitled to recovery of these sales expenses. And it does not explain how sales expenses and professional commissions are excluded from the Sixth

Circuit's determination that Debtors are entitled to the "*entire* value of [the Property]—which, this case would be the cash proceeds from the Property's liquidation at the sale—minus deductions for those sums due to joint creditors" (D.E. 3 PageID 33) (emphasis in original).

Moreover, as with the equitable mootness argument, Trustee did not raise this argument until its motion to reconsider. Thus, it is waived.

## CONCLUSION AND ORDER

The Sixth Circuit determined that Debtors are entitled to the entire value of their Property. The bankruptcy court's order adhered to, and was consistent with, the Sixth Circuit's mandate. Further, Trustee did not properly preserve or develop her equitable arguments. For these reasons, the Court **ORDERS** that the bankruptcy court's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager